**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

| | |
|---|---|
| NATIONAL LOAN ACQUISITIONS COMPANY, | Case No. 2:14-CV-00215-APG-PAL |
| Plaintiff, | **ORDER GRANTING AND DENYING SUMMARY JUDGMENT MOTIONS** |
| v. | |
| JASON YU, MEI YU, and JASON YU AND MEI YU as trustees of the REVOCABLE TRUST AGREEMENT OF JASON YU & MEI YU dated May 12, 1992, | (DKT. #22, #23) |
| Defendants. | |

Plaintiff National Loan Acquisitions Company ("National") filed suit against Defendants Jason Yu and Mei Yu individually and as trustees of the Revocable Trust Agreement of Jason Yu and Mei Yu dated May 12, 1992 (the "Trust"). National contends the Yus and the Trust guaranteed a loan made to Royal International Corporation ("Royal"), a company for which Mei Yu is president. In addition to the guaranties, the loan was secured by commercial property owned by the Trust. According to National, Royal defaulted on that loan, and the Yus and the Trust have not paid on their guaranties. National moves for summary judgment, contending no dispute exists regarding (1) the amount due on the loan and (2) the auction price at the foreclosure sale for the property securing the loan. National separately moves for summary judgment regarding the fair market value of the property at the time of the foreclosure sale. The defendants did not respond to either motion.

**I. BACKGROUND**

On June 18, 2008, Bank of America, N.A. loaned $1,452,000 to Royal. (Dkt. #22-1 at 2-19.) Mei Yu signed the loan documents as President of Royal. (Dkt. #22-1 at 17.) The loan was secured by real property owned by the Trust. (Dkt. #22-1 at 21-41.) The Trust, for which Mei and Jason Yu are trustees, guaranteed the loan. (Dkt. #22-1 at 43-50.) The Yus also each

1   personally guaranteed the loan. (Dkt. #22-1 at 51-70.)  In connection with the loan, Royal and

2   Bank of America also entered into an interest rate swap transaction. (Dkt. #22 at 13; Dkt. #22-2 at

3   27-37.)

4           In May 2013, the loan was in default. (Dkt. #22 at 13; Dkt. #22-2 at 12-51.)  On June 26,

5   2013, Bank of America demanded Royal and the guarantors perform their obligations under the

6   loan documents. (Dkt. #22-2 at 53.)  In July 2013, Royal also defaulted on the interest rate swap

7   transaction. (Dkt. #22 at 13.)

8           Effective July 30, 2013, Bank of America sold all of its interests related to the two

9   agreements to National. (Dkt. #22 at 12; Dkt. #22-2 at 60-87.)  In November 2013, National

10  requested payment on the loan and interest swap transaction defaults. (Dkt. #22-2 at 56-58.)

11  According to National, as of the date National filed its complaint, the amount owed under the

12  loan agreement was $1,259,826.42 and the balance due under the interest rate swap agreement

13  was $241,153.56, for a total amount owed of $1,500,879.98. (Dkt. #22 at 14-15.)

14          National filed this lawsuit on February 10, 2014 against the Yus individually and as

15  trustees of the Trust for breach of the guaranties.  National foreclosed on the property securing the

16  loan and purchased it at the March 25, 2014 trustee's sale via a credit bid in the amount of

17  $500,004.00. (Dkt. #22 at 15.)  National presents evidence that the value of the property at the

18  time it filed the complaint was $1,130,000.00. (Dkt. #23 at 12-13.)  Defendants have not made

19  any payments on the guaranties. (Dkt. #22 at 14.)

20          National has filed two summary judgment motions.  The first motion seeks judgment that

21  the defendants breached their guarantee obligations, the amount owed at the time National filed

22  its complaint was $1,500,879.98, the amount of the indebtedness at the time of the foreclosure

23  sale was $1,515,548.38, and the amount paid for the property at the foreclosure sale was

24  $500,004.00. (Dkt. #22.)  The second motion seeks judgment that the fair market value at the time

25  the complaint was filed was $1,130,000.00. (Dkt. #23.)  Defendants did not oppose either motion.

26  / / / /

27  / / / /

28

## II. DISCUSSION

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions, and affidavits demonstrate "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to go beyond the pleadings and set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000). I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

### A. Liability on the Guaranties

A plaintiff claiming breach of contract must show (1) a valid contract exists, (2) the defendant breached the contract, and (3) the plaintiff was damaged as a result. *Brown v. Kinross Gold U.S.A., Inc.*, 531 F. Supp. 2d 1234, 1240 (D. Nev. 2008). Here, no genuine issue of material fact remains that the Yus, both individually and as trustees for the Trust, contractually agreed to guarantee the loan to Royal, that Royal defaulted and the Yus and the Trust have not made any payments on the guaranties, and that National is damaged as a result of this nonpayment. Accordingly, National is entitled to summary judgment that defendants are liable on the guaranties.

### B. Amount of Indebtedness at Time Complaint Filed

Pursuant to Nevada Revised Statutes § 40.495(4):

If, before a foreclosure sale of real property, the obligee commences an action against a guarantor, surety or other obligor, other than the mortgagor or grantor of

a deed of trust, to enforce an obligation to pay, satisfy or purchase all or part of an
indebtedness or obligation secured by a mortgage or lien upon the real property:
   (a) The court must hold a hearing and take evidence presented by either
party concerning the fair market value of the property as of the date of the
commencement of the action.  Notice of such hearing must be served upon all
defendants who have appeared in the action and against whom a judgment is
sought, or upon their attorneys of record, at least 15 days before the date set for the
hearing.
   (b) After the hearing, if the court awards a money judgment against the
guarantor, surety or other obligor who is personally liable for the debt, the court
must not render judgment for more than:
      (1) The amount by which the amount of the indebtedness exceeds
   the fair market value of the property as of the date of the commencement of
   the action; or
      (2) If a foreclosure sale is concluded before a judgment is entered,
   the amount that is the difference between the amount for which the
   property was actually sold and the amount of the indebtedness which was
   secured,

whichever is the lesser amount.

National commenced this action prior to the foreclosure sale.  National presented evidence
that the amount of the indebtedness on the date National filed the complaint was $1,500,879.98,
and that the amount of the indebtedness at the time of the Trustee's sale was $1,515,548.38.
National also presented evidence that the amount for which the property sold was $500,004.00.
Defendants present no contrary evidence.  Accordingly, no genuine dispute exists that the amount
of the indebtedness at the time the complaint was filed was $1,500,879.98, the amount of the
indebtedness at the time of the Trustee's sale was $1,515,548.38, and the amount paid at the
foreclosure sale was $500,004.00.  I therefore grant National's first summary judgment motion.
(Dkt. #22.)

### C. Fair Market Value

National's second summary judgment motion (Dkt. #23) seeks judgment as a matter of
law regarding the fair market value of the property.  Although National presents evidence relating
to that value and the defendants do not present any contradictory evidence or otherwise oppose
the motion, N.R.S. § 40.495(4) requires me to hold a hearing before determining fair market
value.  Accordingly, I deny National's second summary judgment motion without prejudice.  I
will conduct a fair market value hearing pursuant to § 40.495(4).

/ / / /

**III. CONCLUSION**

IT IS THEREFORE ORDERED that plaintiff National Loan Acquisitions Company's motion for partial summary judgment (Dkt. #22) is GRANTED.  Defendants Jason Yu and Mei Yu, individually and as trustees for the Revocable Trust Agreement of Jason Yu & Mei Yu dated May 12, 1992, are liable on the guaranties, the amount of the indebtedness on the date National filed the complaint was $1,500,879.98, the amount of the indebtedness at the time of the foreclosure sale was $1,515,548.38, and the property was sold for $500,004.00.

IT IS FURTHER ORDERED that plaintiff National Loan Acquisition Company's motion for summary judgment (Dkt. #23) is DENIED without prejudice.

IT IS FURTHER ORDERED that the parties shall confer about available dates for the fair market value hearing during the months of May through September, 2015.  By no later than May 11, 2015, the parties shall submit a joint brief regarding their availability for the fair market value hearing.  If the parties intend to submit motions in limine, they should also propose a briefing schedule for those motions.  If any party does not participate in this scheduling conference, the remaining parties may submit their own brief.

DATED this 29th day of April, 2015.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE